IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Souther: District of Texas
FILED

JUN 2 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. CIV. B-03-094 |
| | § | |
| | § | |
| ISMAEL LOZANO, GERALD MANTHEY | § | **B-03-201** |
| LUIS ERNESTO LONGORIA, CARLOS | § | |
| MASSO, KLAUS MEYER, ABRAHAM | § | |
| OCHOA, GEORGE RAMIREZ, PEDRO | § | JURY TRIAL DEMANDED |
| SANDOVAL, ERIC SOLIS, and DUAINE | § | |
| WOHLERS | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL ANSWER AND COUNTERCLAIM OF CARLOS MASSO

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW CARLOS MASSO (hereinafter "Masso"), Defendant in the above-styled and numbered cause, and files this Original Answer. In support thereof, Defendant Masso would respectfully show the Court as follows:

### FIRST DEFENSE

1.    Defendant Masso denies each and every allegation of said Complaint not hereinafter specifically admitted, modified, explained, or otherwise qualified and strict proof is demanded hereof.

### PRELIMINARY STATEMENT

2.    As to paragraph 1, Defendant Masso denies the allegation of the "surreptious possession and use of illegal devices and equipment designed to decrypt DIRECTV, Inc's (hereinafter "DIRECTV") protected satellite communications,

1
Original Answer of
Carlos Masso

TRUE COPY I CERTIFY
ATTEST:
... N. ...LBY, CLERK

ultimately allowing for the free viewing of television programming" and Defendant Masso denies the "assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals" and demands strict proof.

## FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS
## & SUPPORTING SATELLITE PIRACY CLAIMS

3.    As to paragraphs 2, 3, 4, and 5 Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the allegations and therefore denies the same and demands strict proof thereof.

4.    As to paragraph 6, Defendant Masso admits that he is a resident of the State of Texas. Defendant Masso denies that he "purchased and used illegal pirate access devices that are designed to permit viewing of DIRECTV television programming without authorization by or payment to DIRECTV" and demands strict proof thereof.

5.    As to paragraphs 7 and 8, Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the allegations and therefore denies the same and demands strict proof thereof.

## JURISDICTION

6.    As to paragraph 9, Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the allegations and therefore denies the same and demands strict proof thereof.

7.    As to paragraph 10, Defendant Masso admits that DIRECTV is bringing this lawsuit pursuant to the federal and state statutes indicated in paragraph 10.

Defendant Masso denies that DIRECTV is entitled to any relief against Defendant Masso pursuant to the federal and state statutes indicated in paragraph 10. Defendant Masso denies the "interception of satellite communications", the "improper receipt, transmission and use of satellite programming signals", and that Defendant Masso violated the statutes referenced in paragraph 10 and therefore demands strict proof thereof.

8.     As to paragraph 11, Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the allegations and therefore denies the same and demands strict proof thereof.

## VENUE

9.     As to paragraph 12, Defendant Masso admits that venue is proper in the United States District Court for the Southern District of Texas.  Defendant Masso denies all other allegations contained in paragraph 12 and demands strict proof thereof.

## PARTIES

10.     As to paragraphs 13 and 14, Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the allegations and therefore denies the same and demands strict proof thereof.

11.     As to paragraphs 15, 16, 17, 19, 20, 21, 22, 23, 24, Defendant Masso is not required to respond, but to the extent that this Defendant is expected to answer these allegations, Defendant Masso lacks information sufficient to either admit or deny these allegations, and therefore denies the same and demands strict proof thereof.

1:03cv94 #10                    Page 3/19

12.     As to paragraph 18, Defendant Masso denies each and all the allegations contained therein, singular and plural, and demands strict proof thereof.

13.     As to paragraph 25, Defendant Masso admits that Plaintiff sometimes refers to the Defendants collectively as "Defendants." Defendant Masso denies any affiliation or connection with any and all of the other Defendants named in the complaint and demands strict proof thereof.

14.     As to paragraph 26, Defendant Masso denies the allegations and therefore demands strict proof thereof.

15.     As to paragraph 27, Defendant Masso denies the allegations and therefore demands strict proof thereof.

16.     As to paragraph 28, Defendant Masso denies the allegations and therefore demands strict proof thereof.

### DISCOVERY OF ILLEGAL CONDUCT

17.     Defendant Masso denies that he was involved in pirating satellite programming. Defendant Masso does not have sufficient knowledge, at this time, to admit or deny the other allegations of discovery of illegal conduct, including but not limited to any raids occurring in May of 2001 and therefore denies the same and demands strict proof thereof.

### CAUSES OF ACTION

### 47 U.S.C. §605

18.     As to paragraphs 29, 30, 31, 32, 33, and 34, Defendant Masso denies the allegations and demands strict proof thereof. Defendant Masso specifically denies he has violated 47 U.S.C. §605 and that any conduct of Defendant Masso

has caused any injury or damage alleged by Plaintiff. Furthermore, Defendant Masso denies that Plaintiff is entitled to any damages listed in paragraphs 33 and 34.

## 18 U.S.C. §2511

19.   As to paragraphs 35, 36, 37, and 38, Defendant Masso denies the allegations and demands strict proof thereof. Defendant Masso specifically denies he has violated 18 U.S.C. §2511 and that any conduct of Defendant Masso has caused any injury or damage alleged by Plaintiff. Furthermore, Defendant Masso denies that Plaintiff is entitled to any damages listed in paragraph 38.

## 18 U.S.C. §2512

20.   As to paragraphs 39, 40, 41, and 42, Defendant Masso denies the allegations and demands strict proof thereof. Defendant Masso specifically denies he has violated 18 U.S.C. §2512 and that any conduct of Defendant Masso has caused any injury or damage alleged by Plaintiff. Furthermore, Defendant Masso denies that Plaintiff is entitled to any damages listed in paragraph 42.

## 47 U.S.C. §605(e)(4)

21.   As to paragraphs 43, 44, 45, and 46, Defendant Masso denies the allegations and demands strict proof thereof. Defendant Masso specifically denies he has violated 47 U.S.C. §605(e)(4) and that any conduct of Defendant Masso has caused any injury or damage alleged by Plaintiff. Furthermore, Defendant Masso denies that Plaintiff is entitled to any damages listed in paragraph 45.

## Civil Conversion

22.     As to paragraphs 47, 48, 49, and 50, Defendant Masso denies the allegations and demands strict proof thereof.    Defendant Masso specifically denies he has "unlawfully converted DIRECTV's property", that he deprived "DIRECTV of its proprietary interests" or that DIRECTV has suffered any damages.

## Tex. Civ. Rem. Code 123.001, et seq.

23.     As to paragraphs 51, 52, and 53, Defendant Masso denies the allegations and demands strict proof thereof.    Defendant Masso specifically denies that he has violated Chapter 123 of the Texas Civil Practice and Remedies Code and that any conduct of Defendant Masso has caused any injury or damage alleged by Plaintiff.    Defendant Masso denies that Plaintiff is entitled to any damages listed in paragraph 53.

## Injunction

24.     As to paragraphs 54, 55, 56, 57, and 58, Defendant Masso denies the allegations and demands strict proof thereof.    Defendant Masso specifically denies that Defendant Masso receives, intercepts, transmits, and exhibits satellite programming, illegally and without authorization, in violation of 47 U.S.C. §605 and denies that the Plaintiff is entitled to the injunctive relief requested.    There is no showing of imminent irreparable injury or even any probability at all of illegal conduct to restrain.

## SECOND DEFENSE

### (12(b)(6)-Motion to Dismiss)

### (Failure to State Facts Sufficient to Constitute a Cause of Action)

6
Original Answer of
Carlos Masso

25.    The preceding allegations and defenses are realleged.

26.    The Plaintiff has failed to state facts sufficient to constitute a cause of action as plead in the complaint; as a result, the Complaint, along with all of its causes of action, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the laws of the State of Texas, and the principles of fairness, equity and justice.

### THIRD DEFENSE

### (Estoppel)

27.    The preceding allegations and defenses are realleged.

28.    Subject to and without waiving the above defenses, Defendant Masso alleges that by virtue of the acts and omissions on the part of the Plaintiff herein as more fully set forth above in this Answer, the Plaintiff's own negligence, recklessness and other careless conduct in regards to this event should act as an equitable bar to the action brought by the Plaintiff and therefore, based on the above referenced actions on the part of the Plaintiff, this action should be barred by the equitable doctrine of Estoppel.

### FOURTH DEFENSE

### (Waiver)

29.    The preceding allegations and defenses are realleged.

30.    Subject to and without waiving the above defenses, Defendant Masso alleges that based on the acts and omissions more fully detailed above in the preceding Defenses on the part of the Plaintiff, this action should be barred by the equitable doctrine of waiver.

7<br>Original Answer of<br>Carlos Masso

## FIFTH DEFENSE

### (Mitigation of Damages)

31.    The preceding allegations and defenses are realleged.

32.    Subject to and without waiving the above defenses, Defendant Masso would assert that the Plaintiff had a duty to mitigate damages, should any be found to exist, in this matter and would further assert that the Defendant believes that Plaintiff has failed to do so, and therefore, the foregoing should act as a complete bar to all causes of action against the Defendant Masso.

## SIXTH DEFENSE

### (Laches)

33.    The preceding allegations and defenses are realleged.

34.    Subject to and without waiving the above defenses, Defendant Masso would assert that based on the acts and omissions more fully detailed above in the preceding Defenses on the part of the Plaintiff, this action should be barred by the equitable doctrine of laches.

## SEVENTH DEFENSE

### (Intervening and Superceding Act)

35.    The preceding allegations and defenses are realleged.

36.    Upon information and belief, Plaintiff's injuries and damages, if any there are, are the direct and proximate result of the intervening and superceding actions or omissions of some person, party, entity or company other than the Defendant Masso over whom Defendant Masso had no control so as to bar recovery as to Defendant Masso.

8

Original Answer of
Carlos Masso

## EIGHT DEFENSE

### (Lack of Necessary and Proper Parties)

37.     The preceding allegations and defenses are realleged.

38.     Defendant Masso is not the necessary and proper party for this action as more fully detailed above, and therefore this action should be dismissed.

## COUNTERCLAIMS

### Unfair Competition

39.     Commencing prior to June 1, 2001, but continuing on that date and thereafter, DIRECTV and or its agents, engaged in, is engaged in, and proposes to engage in the Texas common law tort of unfair competition which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any other act prohibited by Texas law.

40.     DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States.

41.     DIRECTV encrypts-electronically scrambles-its satellite transmissions to prevent unauthorized viewing of its satellite television programming. DIRECTV offers its television programming to residential customers on a subscription and pay-per-view basis only. Each customer is required to obtain DIRECTV access card and other system hardware including a small satellite dish and to create an account with DIRECTV. Upon activation of the access card by DIRECTV, the customer can receive and view in decrypted (unscrambled) format those channels to which

the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

42.    In the past several years, DIRECTV came into possession of various business records of companies which DIRECTV suspected had been involved in selling lawful, noncontraband, electronic devices and hardware that could, under certain circumstances and conditions, be used by a person with sufficient expertise to receive unauthorized satellite transmissions. DIRECTV calls persons who use such devices and hardware to receive unauthorized satellite transmissions "pirates." These records contained names and addresses of persons who were listed ·as the recipients of these devices and hardware. These individuals are consumers or "end-users" as DIRECTV would call them.

43.    Rather than investigating whether the persons identified in the business records had (1) actually received the hardware and (2) used it in some illegal or improper fashion as a "pirate," DIRECTV originated, developed and implemented a policy, practice and scheme by which their agents, law firms and collection agencies, would send a series of form "Demand Letters" to all persons whose names had been found in the business records. The Demand letters were drafted in-house by DIRECTV and modified only slightly by the agents who sent the letters.

44.    The purspose of this scheme was to intimidate and coerce said persons into forfeiting said equipment and to extort a sum of money payable to DIRECTV and its agents. The further goal of this scheme was to deter any person from purchasing similar equipment in the future, regardless of their intentions and use

for such hardware. DIRECTV expressly stated its goal was to send out at least 100,000 Demand Letters.

45. In order to meet its goal, DIRECTV determined that it was not feasible to actually investigate the merits of the piracy allegations against individuals prior to sending the Demand Letters to them. Accordingly, DIRECTV did not attempt to contact these persons to inquire as to the purpose for their suspected purchase and did not attempt to determine if the person currently had or ever had a DIRECTV satellite system. Moreover, in the threatning Demand Letters, DIRECTV did not request an explanation or express an interest in receiving an explanation from the consumer as to the reasons for his or her possession of the devices or hardware.

46. In order to implement this scheme, DIRECTV utilized the services of several collection agencies and law firms to act as its agents in sending the Demand Letters and handling communications with the recipients. These agents include Greer, Herz & Adams, L.L.P.

47. Since DIRECTV implemented this strategy in mid-2001, DIRECTV has sent out an estimated 50,000 to 100,000 form Demand Letters.

48. The form Demand Letters typically were and are of two variants. The first variant, or Initial Demand Letter, typically contained and still contains the following common elements:

    a. An introduction confirming that the sender was acting as the agent of DIRECTV, Inc.

    b. Repeated accusations that the recipient has committed "illegal" and "unlawful" activities and "theft," backed up with several references to federal

laws, which make it illegal to engage in certain conduct attributed to the recipient. The implication of the Letters is that the recipient could face civil and criminal prosecution as a result of this conduct. However, at the time DIRECTV sent the letters, DIRECTV possessed no business records or other evidence indicating that the recipient had viewed unauthorized DIRECTV satellite programming and was committing theft or had attempted to commit theft.

c.   A purported factual assertion that the sender possessed business records that established the recipient had purchased or acquired illegal signal theft equipment. However, the Letters do not specifically describe or identify what equipment the recipient possesses which is supposedly illegal signal theft equipment. In fact, non of the actual pieces of equipment, which are the subject of these Demand Letters, are contraband or illegal items. At most, they are pieces of hardware that have many innocent uses, but which under certain circumstances and if certain conditions are met, could (in knowledgable hands) be used to receive unauthorized satellite transmissions. Moreover, the business records are comprised of mailing lists and shipping records seized under hostile and unreliable conditions from third parties which, at the time DIRECTV sent the letters, had not been corroborated or authenticated in any way.

d.   A purported factual assertion that the recipient had purchased or acquired the signal theft equipment to gain unauthorized access to DIRECTV's programming. However, the Letters do not specify whether the recipient is or

12<br>
Original Answer of<br>
Carlos Masso

was a DIRECTV subscriber. In fact, the Letters were sent to many recipients who never owned a DIRECTV system and, therefore, could not possibly have received unauthorized transmissions even with the "signal theft equipment" DIRECTV accused them of purchasing. The items in question would have been as useless to a recipient who lacked a satellite dish as a shoe to a man without a matching foot.

e.  A purported factual assertion that the recipient had modified devices to illegally gain access to DIRECTV's programming. However, at the time DIRECTV sent the letters, it did not actually know whether the recipients had modified the devices or not as they had never seen the devices in question and knew nothing about the capabilities of the recipients to make such modifications.

f.  A list of demands which either must be met in a timely fashion, or a lawsuit would be filed against the recipient within 14 days or some other specified short period of time. The Letters flatly state that after this period of time, DIRECTV will "initiate legal proceedings in the federal district court" and "abandon its attempts to negotiate." The list of demands includes payment of an unspecified sum of money, forfeiture of property and a promise never to acquire similar property in the future.

g.  The threat that if the recipient does not settle, DIRECTV will seek and be entitled to recover monetary damages of $100,000 or more from the recipient, and implication that the recipient could be criminally prosecuted since the statutes cited are criminal laws.

49. Defendant · Masso received at least one Demand Letter that contained the foregoing elements.

50. Many of the statements contained in these Demand Letters are false, misleading, or deceptive for numerous reasons, including those set forth above. Moreover, in making the claims set forth in the Demand Letters, DIRECTV had knowledge of the falsity of the claims and made them with a reckless and conscious disregard for the truth.

51. The second variant, or Secondary Demand Letter, was sent several weeks to several months after the Initial Demand Letter, and typically reiterated the accusations that the recipient had purchased illegal signal theft equipment, and flatly stated that unless the recipient contacted the sender within ten days a lawsuit would be filed based upon a draft complaint that was sent to the recipient.

52. This Secondary Demand Letter contains the same type of false, misleading or deceptive statements as are present in the Initial Demand Letter, plus the false implication that a lawsuit would be filed immediately after ten days.

53. At the time each of these Demand Letters was issued to Defendant Masso and others, DIRECTV did not have a serious and good faith intent to pursue imminent litigation against the recipients for two reasons. First, in the vast majority of cases, DIRECTV did not actually have documentary evidence that Defendant Masso and others were in possession of illegal signal theft equipment; instead, the Letters were merely a tactical ploy to induce as settlement. DIRECTV gambled, correctly as it turned out, that a substantial percentage of the recipients, as unsophisticated consumers, would submit to DIRECTV's demands due to

1:03cv94 #10          Page 14/19

confusion over the intimidating allegations and factual misrepresentations contained in the Letters, as well as financial inability to defend themselves against the draconian penalties threatened by DIRECTV. Secondly, due to the sheer number of Demand Letters issued, DIRECTV could not possibly hope to file lawsuits in the near future against more than a miniscule percentage of the recipients and certainly could not sue every recipient in the event a settlement was not forthcoming. As it turns out, DIRECTV has only sued a small percentage of the recipients who failed to settle and have settled with a substantial percentage of the recipients. Suing a small fraction of the thousands of persons who were sent Letters does not constitute a serious and good faith intent to pursue imminent litigation.

54.    The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was an "unlawful" business act or practice within the meaning of the unfair competition laws because in sending the Letters DIRECTV violated Texas Penal Code section 32.48 (simulating legal process) and other laws including extortion and attempted extortion and comparable federal statutes relating to extortion – 18 U.S.C §§ 875, 876 and 1951- and mail and wire fraud, 18 U.S.C. §§ 1341 and 1343.

55.    The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was a "fraudulent" business act or practice and deceptive or misleading advertisement within the meaning of the relevant laws because Demand Letters contained

statements which were capable of deceiving or had a tendency to deceive the recipients.

56.     The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was an "unfair" business act or practice. The fairness of business conduct is determined by weighing the practice's impact on consumers and members of the general public against the business justification for the conduct. Here, DIRECTV's legitimate concerns about piracy of satellite transmissions does not come close to justifying their carpet-bombing, collateral-damage-ignoring, heavy handed campaing of intimidation and extortion, accusing thousands of innocent persons on the possibility a few guilty persons may be uncovered. Using DIRECTV's logic, the record companies should send a similar demand letter to every person in the United States who owns a Cd-Burner and one or more commercial CD's because that person has the necessary equipment to make unauthorized copies of commercial music.

57.     In engaging in conduct that constitutes unfair competition, DIRECTV has acquired money or property from members of the general public. Specifically, DIRECTV has acquired the money paid by recipients of the Demand Letters and the value of property forfeited by those persons.

58.     The aforementioned business practices of DIRECTV is likely to continue and therefore will continue to violate the law and deceive the public unless this court enjoins them. Defendant Masso is entitled to preliminary and other equitable declaratory relief as may be appropriate under the circumstances and requests that

1:03cv04 #10                    Page 16/19

DIRECTV be directed to cease its above stated practicess and that DIRECTV be enjoined from and prohibited from continuing its illegal practices.

### Intentional Infliction of Emotional Distress

59.    Defendant Masso realleges the allegations contained in paragraphs 39 through 58 above  and incorporates such allegations as if fully set forth herein.

60.    DIRECTV, intentionally or recklessly sent extremely harassing and disturbing letters to Defendant Masso falsely accusing him of crimes and threatening him so that he would be afraid and send thousands of dollars to DIRECTV.  DIRECTV's conduct was extreme and outrageous and proximately caused Defendant Masso severe emotional distress.    Defendant Masso suffered damages for which Defendant Masso herein sues.

### DAMAGES

61.    Defendant Masso realleges the allegations contained in paragraphs 39 through 58 above  and incorporates such allegations as if fully set forth herein.

62.    Defendant Masso has sustained damages or will sustain damages as a result of the actions and/or omissions of DIRECTV as follows:

a.    Reasonable attorney's fees incurred by or on behalf of Defendant Masso;

b.    Reasonable and necessary costs incurred in pursuit and defense of this suit;

c.    Expert fees;

d.    Inconvenience;

e.    Pre-Judgment Interest;

f.    Mental Anguish in the past;

17
Original Answer of
Carlos Masso

g.    Mental Anguish in the future;

h.    Statutory damages;

i.    Compensatory damages; and

j.    Any and all other relief, equitable or otherwise, that the Court deems appropriate.

## EXEMPLARY DAMAGES

63.    Defendant Masso realleges the allegations contained in paragraphs 39 through 58 above and incorporates such allegations as if fully set forth herein.

64.    Defendant Masso would further show that the acts and omissions of DIRECTV complained herein were committed with malice or reckless indifference to the protected rights of Defendant Masso. In order to punish DIRECTV for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Defendant Masso also seeks recovery from DIRECTV for exemplary damages.

## REQUEST FOR JURY TRIAL

65.    Defendant Masso hereby requests a trial by jury.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Carlos Masso, respectfully prays that Plaintiff take nothing against him. Further, Defendant Masso prays that upon a final hearing of the cause, judgment be entered for Defendant Masso and against DIRECTV for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; attorney's fees and litigation expenses

1:03cv94 #10          Page 18/19

in connection with this defense before, during and after trial; and any further relief in law

and in equity, both general and specific, to which he may show himself justly entitled.

Respectfully submitted,

Carlos Masso, Pro Se
1621 Tulane Ave.
Brownsville, Texas 78521
Telephone: (956) 550-9938
Cell phone: (956) 266-9938

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered in person to counsel of record listed below on this 20th day of June, 2003:

Lecia L. Chaney
Rodriguez, Colvin & Chaney, L.L.P.
1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522

Carlos Masso